UNITED STATES of America,
Plaintiff-Appellee,

v.

Heverto Rene RAMIREZ, a/k/a "Beto",
Defendant-Appellant.

No. 75–2117.

United States Court of Appeals,
Fifth Circuit.

June 1, 1976.

Tex. (Court-appointed), for defendant-appellant.

Edward B. McDonough, Jr., U. S. Atty., Mary L. Sinderson, Asst. U. S. Atty., Houston, Tex., for plaintiff-appellee.

Before GODBOLD, RONEY, and JAMES C. HILL, Circuit Judges.

JAMES C. HILL, Circuit Judge:

Defendant-Appellant, Heverto Rene Ramirez, a/k/a "Beto", was charged along with Lorenza Garza, Jose Angel Casanova, Conrado Alvarado Alvarado, Ralph Gutierrez Garza, Jr. and Eduardo M. Ramirez, Jr., in a six-count indictment, alleging conspiracy to possess with intent to distribute heroin, in violation of Title 21, United States Code, Section 846[1] and Title 18, United States Code, Section 2,[2] possession with intent to distribute heroin, and distribution of heroin on or about November 8, 1974, in violation of Title 21, United States Code, Section 841(a)(1).[3] Defendant was tried together with three co-defendants and found guilty on all three counts. We affirm.

Defendant's sole defense was entrapment. Special Agent Louis Dracoulis of the Drug Enforcement Administration (DEA) testified that he contacted defendant by telephone on October 9, 1974. Dracoulis negotiated with defendant concerning the sale of a pound of heroin. Defendant requested that Dracoulis meet him in Corpus Christi at a service station. Dracoulis and DEA Agent Eaks met defendant at the service station but defendant requested

Roland E. Dahlin, II, Federal Public Defender, Mike DeGeurin, William W. Burge, Asst. Federal Public Defenders, Houston,

---

1. 21 U.S.C. § 846:

Any person who attempts or conspires to commit any offense defined in this subchapter is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

2. 18 U.S.C. § 2:

(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

3. 21 U.S.C. § 841(a)(1):

(a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—

(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance;

that they move to a nearby cafe. At the cafe the trio discussed the possible purchase of a pound of heroin for $15,000.00. Defendant said that his Mexican affiliates would only deliver heroin as far as McAllen, Texas. The three tentatively agreed to meet at McAllen on October 18, 1974.

On October 18, 1974, defendant called Dracoulis and told him that the Mexican weather was wet and travel was impossible. Defendant requested that they meet again at the restaurant for further negotiations. At this second meeting defendant requested $4,000.00 earnest money, but Dracoulis refused. Defendant said that on October 23, 1974, a delivery of heroin would be made to Kingsville, Texas, at a paint and body shop on Corral Street.

After several delays, defendant met Dracoulis at the Sunset Cafe in Kingsville on November 8, 1974, and introduced Dracoulis to his "money men." The agents then followed defendant to a paint and body shop. Defendant and the two agents entered the shop while the other individuals remained outside. Conrado Alvarado and Jose Casanova were in the shop. At defendant's direction, Casanova handed Dracoulis the heroin. Agent Eaks and defendant left the shop with a sample to test the quality. Casanova told Dracoulis that they had gone to Mexico earlier that day to obtain the heroin and that they knew a person who worked at the bridge and could pass anything across while that person was working. All of the defendants were arrested at the body shop.

The issue presented in this case is whether the trial court committed reversible error in limiting defendant's right to cross-examine government witnesses concerning the relationship between the government agents and a confidential informer, where alleged entrapment of defendant by the informer was claimed. On cross-examination defense counsel questioned Dracoulis regarding an alleged confidential informer

named Jesse Gutierrez. Defense counsel further questioned Dracoulis regarding a cocaine transaction some months prior to the offense charged in the indictment in which Dracoulis, Eaks, Gutierrez, and defendant had participated. The trial court sustained objections to questions relating to Gutierrez's activities as an informant.

On cross-examination Agent Eaks testified that the first time he saw defendant was in July, 1974. On that occasion a "confidential informant" had arranged for defendant to sell the agents an ounce of cocaine. Defense counsel was not allowed to ask if the informant was Gutierrez or how much money was paid the informer. Defense counsel represented to the Court that the informant was Jesse Gutierrez and that Gutierrez had urged and prevailed upon defendant to furnish heroin to the two agents. The trial court ruled that defendant would not be permitted to cross-examine the agents as to their relationship with the informer and as to the activities of the informer and how much cash was paid to him. The Court further ruled that cross-examination of the agents should be limited to matters material and relevant to the indictment.[4]

Defendant contends that it was reversible error for the trial court to deny him the right to examine the government witnesses on the role that Gutierrez played in the case by asking the agents how much money was paid the informer, their relationship with the informer, and whether there were charges pending against the informer. However, we find that the trial court's limitation upon the scope of cross-examination in this case was not error and that defendant was not denied the opportunity to present his entrapment defense.

"The extent of cross-examination with respect to an appropriate subject of inquiry is within the sound discretion of the trial court." *Alford v. United States*, 1931, 282 U.S. 687, 694, 51 S.Ct. 218, 220, 75 L.Ed.

**4.** The trial court stated:

"Now my ruling is that you are limited in your cross examination to matters relating to

the Overt Acts and the charges presently before the Court with which your client is charged." Transcript, p. 264.

624, 629. "However, the full cross-examination of the witness is a right and it is only after a party has had an opportunity to exercise the right of cross-examination that the discretion becomes operative." *Grant v. United States*, 5 Cir., 1966, 368 F.2d 658, 661; *United States v. Bass*, 5 Cir., 1974, 490 F.2d 846, 857–58, n. 12. Generally speaking, the scope of cross-examination is limited by the direct examination. *United States v. Buchanan*, 5 Cir., 1974, 500 F.2d 398; *see also* McCormick on Evidence, § 21 (2nd Ed. 1972). And, of course, the trial judge is the "governor" of the conduct of the trial. *United States v. Banks*, 5 Cir., 1973, 475 F.2d 1367, 1368.

■ By asserting the defense of entrapment, defendant necessarily admitted the acts charged against him. *United States v. Newcomb*, 5 Cir., 1974, 488 F.2d 190; *United States v. Williamson*, 5 Cir., 1973, 482 F.2d 508; *United States v. McKinley*, 5 Cir., 1973, 493 F.2d 547. The principal element of the defense of entrapment is the defendant's lack of predisposition to commit the crime. *United States v. Russell*, 1973, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366. The problem with defendant's contention that he was denied the opportunity to develop his defense of entrapment is that the contention is not supported by the record.

■ The record does support the proposition that the trial court limited the defense on cross-examination to material that at the time appeared relevant. Defense counsel had made it known from the outset that his defense would be entrapment. However, we do not think that the mere announcement of such precludes the trial court from insisting that the conduct of the trial be carried on in such a way as to be understandable and cohesive. The proposed defense *cross-examination* went beyond the events which were the subject matter of the charges against the defendant.

We think a more crushing blow is dealt to defendant's assertion, however, by the

events which transpired after the prosecution rested. The defendant himself took the stand and testified to the events which occurred in the summer of 1974. Defendant stated that he had never engaged in drug transactions until Gutierrez asked him if defendant could get some cocaine for him. Defendant stated that Gutierrez advanced him $200.00 to buy the drugs, and that he met with Dracoulis, Eaks and Gutierrez on July 2, 1974, and gave the cocaine to Gutierrez for $1200.00.[5] Later Gutierrez allegedly called defendant and urged him to treat his friend, Dracoulis, right. When defendant told Gutierrez that he did not have any money, Gutierrez suggested co-defendant Ralph Garza, Jr. as a "money man."

■ After this testimony of the defendant, defense counsel made no attempt to have the government agents recalled for the purposes of renewing his earlier line of inquiry. Nor did the defense call the informant Gutierrez himself although he was in attendance at the trial. We agree with the Second Circuit that "particularly in view of the defense decision not to call [the informer], these questions do not appear sufficiently likely to have developed evidence that would have significantly weakened the Government's case." *United States v. Jones*, 1966, 360 F.2d 92, 96.

Defendant cites *Hughes v. United States*, 9 Cir., 1970, 427 F.2d 66, and *United States v. Lewis*, 2 Cir., 1971, 447 F.2d 134, for the proposition that cross-examination was improperly limited in this case. However, in each of those cases the government agent allegedly responsible for inducing the criminal conduct was called on to testify. In the case *sub judice* the defense had the opportunity and made the decision not to call the informer as a witness, even though the defense had subpoenaed the informant and he was held in attendance at the trial for more than five days.

■ In summary, we think the trial court's limitation on cross-examination in

---

5. This is evidently the same transaction which the trial court had allowed defense counsel to

explore on the cross-examination of Agent Eaks.

this case was clearly within his discretion. Insofar as defendant asserts that he was denied a reasonable opportunity thereby to show that the informer was biased against him, the informer's credibility was not in issue, since he was not a witness at trial. The defendant's argument that the trial court effectively denied him the opportunity to present his entrapment defense is not supported by the record. The defendant's conviction is, therefore,

AFFIRMED.