**Harry M. HARRISON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 04–81–00070–CR.**

Court of Appeals of Texas,
San Antonio.

Feb. 3, 1982.

Rehearing Denied March 10, 1982.

Rand Riklin, Nicholas & Barrera, Inc., San Antonio, for appellant.

Alger H. Kendall, Jr., Barry D. Brown, Pearsall, for appellee.

Before KLINGEMAN, CLARK and BASKIN, JJ.

## OPINION

BASKIN, Justice.

This appeal is taken from a conviction for cattle theft. Punishment was assessed at five years' probation, a $5,000.00 fine, and an order of restitution for $5,487.26.

Appellant, Harry M. Harrison, was manager and part owner of the Frio Livestock Sales Company in Pearsall, Texas. R. R. Carey of Mineral Wells sent twenty-one Hereford bulls to be sold at a special sale at the auction barn. Appellant offered to guarantee to pay R. R. Carey $575 per bull and to split any amount in excess of that amount. Carey agreed but insisted that the bulls would belong to him until sold. The check-in sheet showed that upon arrival of the bulls they were recorded as belonging to "Harrison Carrey." This was the first in a series of events and documents in which names sounding like "Carey" were used to denote ownership of, possession of, or payment for the bulls. The name of the original owner, R. R. Carey, never appeared in any of the records of the auction barn or of appellant.

Of the twenty-one bulls shipped, ten were sold at private treaty on March 10, 1978, to E. K. Behrens for the Las Vegas Ranch, Quemado, Texas. Appellant had Behrens to execute two separate checks in payment for the ten animals. One check was made payable to "Harrison Carrey" in the amount of $2,800.00 for four bulls and the other was payable to "Connell Homes, Inc." in the amount of $4,200.00 for the remaining six bulls. The $2,800.00 check was deposited by appellant in one of his accounts.

The remaining eleven bulls went through the special sale on Saturday, March 11, 1978. R. R. Carey was present and observed most, if not all, of the eleven bulls go through the ring. The ring sheet showed the owner of the bulls to be Harrison Carrey. The cattle which did not bring the desired price or which were not sold were "charged back" to Harrison Carrey. Later the seller's sheet was changed to indicate the owner to be Connell Homes, Inc. The purchaser of eight of the bulls was shown to be "Carrey." R. R. Carey assumed that "Carrey" referred to him.

On March 11, 1978, a check was drawn by the Frio Livestock Sales Company payable to Harrison (Carrie). The check was voided by tearing off the signature, and another check in the same amount was issued to Connell Homes, Inc.

Appellant has a daughter named Carrie Harrison. Prior to the sale, Ann Moore, an employee at the Auction, asked appellant who "Carrey" was, because the name was spelled "Carrie" and "Carrey." Appellant responded, "That's my little girl." All eight of the bulls "sold" to "Carrey" were "purchased" by "Carrie."

On Monday, March 13, 1978, the regular sale day for the Frio Livestock Sales Co., some of the bulls "bought" by "Carrie" were sold by Seven-Cattle Co., appellant's company.

E. A. Connel, a banker from Brady, Texas, and owner or major stockholder of Connell Homes, Inc., was indicted for theft of $5,487.26, the proceeds from the sale of the eleven bulls not sold at private sale. Connel reached agreement with the State that if he testified in this cause on behalf of the State and if he repaid the sum of $121,817.39, for the benefit of individuals who had had cattle stolen on March 11, 1978, the State would dismiss the charges. If he so testified and if he paid only $61,000, then it was agreed that he could plead guilty to a Class A misdemeanor.

Connel and Harrison had been associated with one another in various phases of the cattle business for some time. Connel had arranged financing for their ventures, and by the time of this transaction, the indebtedness had escalated to the point of jeopardizing his career.

Connel testified that appellant had told him that the bulls belonged to a man from Mineral Wells but that he, Harrison, would sell them in his own name or in Connel's name and give Connel the money to pay off their existing debts. Connel took the sale proceeds from appellant, supposedly to arrange refinancing. Through an elaborate series of transactions, he paid off several loans.

■ Connel, in partial compliance with his plea bargain, testified against appellant. On cross-examination, appellant's attorney was not permitted to cross-examine Connel with regard to his complicity with appellant and particularly with regard to his (Connel's) own guilt, when Connel invoked his Fifth Amendment privilege. Appellant assigns this ruling as error, claiming that appellant was thus deprived of his right of confrontation and of cross-examination of the witness. Appellant contends that since Connel received immunity, he should have been required to testify fully. Appellant is mistaken in his contention that Connel had received full immunity. Full immunity would not be his until he had so testified *and* had repaid the sum of $121,817.39. Until he was completely immunized, Connel could not be required to admit guilt to specific crimes.

■ The right to cross-examine is implicit within the right of confrontation provided by the Sixth Amendment as applied through the Fourteenth Amendment. U.S. Const. amends. VI and XIV; Tex.Const. art. 1, § 10; *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973); *Sellers v. State*, 588 S.W.2d 915 (Tex.Cr.App.1979); *Porter v. State*, 578 S.W.2d 742 (Tex.Cr.App.1979). Such a right is one of the safeguards essential to a fair trial. *Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965).

■ The right is not unrestricted, however, and the scope of such examination is within the discretion of the trial judge. This discretionary authority can be exercised only after there has been permitted, as a matter of right, sufficient cross-examination to satisfy the Sixth Amendment. *Alford v. U. S.*, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624 (1931); *U. S. v. Ramirez*, 533 F.2d 138 (5th Cir. 1976), *cert. denied*, 429 U.S. 884, 97 S.Ct. 235, 50 L.Ed.2d 165; *U. S. v. Bass*, 490 F.2d 846, 848 (5th Cir. 1974). The purpose of cross-examination is to test the accuracy and credibility of witnesses. The manner and extent of such inquiry must rest within the trial court's discretion.

■ The record establishes that the trial court limited the cross-examination in the instant case to relevant matters. Connel's plea bargain with the State was read in its entirety before the jury. Connel also admitted to being indicted on six counts relating to various violations arising at least in part out of the transaction which was made the basis of this prosecution. Further, Connel's testimony indicated that he and appellant were involved together in nearly all of these transactions, and appellant's counsel effectively used this information to attempt to impeach Connel before the jury as to bias and prejudice.

Connel's confession as to his own factual guilt would have been merely cumulative of his prior testimony and was irrelevant to any issue at trial. We hold that on these facts, appellant received his full constitutional right to confrontation and cross-examination and that the trial court's action in refusing to allow appellant's counsel to extract an answer regarding factual guilt from the witness was not reversible error. Appellant's first ground of error is overruled.

 In his second ground of error, appellant maintains that there was a material and fatal variance between the descriptive averments in the indictment and the actual proof. It is appellant's contention that since the complainant, R. R. Carey, had given appellant his consent to sell the bulls, appellant did not appropriate the bulls without the owner's consent as alleged in the indictment. Appellant argues that the appropriation, if any, was of the owner's money and not of the bulls.

Appropriation is defined as follows: "To bring about a transfer or purported transfer of title to or other nonpossessory interest in property, whether to the actor or another; or to acquire or otherwise exercise control over property other than real property." Tex.Penal Code Ann. § 31.01(5)(A) & (B) (Vernon Supp.1980). There was ample evidence from which the jury could conclude that appellant appropriated the bulls without the effective consent of the owner. The evidence showed that the owner, Carey, meant to retain title to the bulls until they were sold for his account. There was evidence that the bulls were sold for the account of appellant and hence were appropriated for that purpose. The record also establishes that appellant used the money to pay off personal debts through a series of deceptive transactions. The second ground of error is overruled.

 Finally, appellant contends that the trial court's failure to submit a jury instruction concerning the existence of a consignment sale was reversible error. The requested instruction was based on appellant's theory at trial that he had purchased the bulls from Carey and therefore could not be guilty as charged. Examination of the charge reveals that appellant received the full benefit of a consignment instruction through the court's submission of the charge to the jury. The charge permitted the jury to acquit appellant if they found that he purchased the bulls by virtue of a contract of credit sale. While the submitted charge did not present the requested charge verbatim, it fully encompassed the consignment issue and was a proper submission in this case. Where the trial judge's instructions encompass the substance of matters which the defendant desires to have propounded to the jury, failure to give the defendant's specific requested instruction does not entitle the defendant to a reversal. *Debolt v. State*, 604 S.W.2d 164 (Tex.Cr.App.1980); *Thomas v. State*, 578 S.W.2d 691 (Tex.Cr.App.1979).

Accordingly, the final ground of error is overruled, and the judgment is affirmed.