Oscar **FUENTES**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 09 83 079 CR.

Court of Appeals of Texas, Beaumont.

Jan. 18, 1984.

Discretionary Review Refused June 20, 1984.

John Andrew King, Austin, for appellant.

Paul Womack, Austin, for appellee.

## OPINION

DIES, Chief Justice.

This appeal was transferred to this Court from the Court of Appeals, Third Supreme Judicial District in Austin by the Supreme Court of Texas by order dated May 4, 1983. Appellant was convicted by a jury of murder, and the jury assessed his punishment at twenty-five years confinement in the Texas Department of Corrections.

Appellant's first ground of error follows: "The trial court erred in refusing to grant motion to strike the entire testimony of Alice Renee Brookshire ... and failure to declare a mistrial pursuant to the testimony of Alice Renee Brookshire."

On January 29, 1982, a group of youths was congregated on and under a bridge near a skating rink named "Hot Wheels" in Austin. They were "sniffing paint." James Bailey walked by and had words with appellant's sister, Ruby, whereupon a fight broke out in which appellant and others were involved. Bailey was stabbed through the heart. The State's key witness was Alice Renee Brookshire. Appellant was prevented from showing Brookshire's prior hospitalization, apparently wholly or partly because of psychiatric problems. Her family, the Shoal Creek Hospital, and a treating physician, Dr. Ingrid Schmidt, invoked the Privilege of Psychiatric Records found in *TEX.REV.CIV. STAT.ANN. art. 5561h* (Vernon Supp. 1982–1983). Dr. Schmidt, under a limited waiver signed by Renee's mother, testified before the court that Renee was "mentally ill" at or near the time of the murder. The trial judge in disallowing the proffered documents, commented:

"I have examined the documents that were presented by the ... Hospital ... The information is very damaging to the welfare of the minor, Alice Brookshire, to such an extent that it would not be admissible in evidence and it would throw absolutely no light upon any of the issues involved in this case. . . .

\* \* \* \* \* \*

"The only ruling I have made is that these hospital records contain matters that are not for the welfare and interest of a minor child, that they're very detrimental to the welfare of the minor child, that they are very disruptive to the family unit of this minor child and that it disrupts the efforts that are being made by the Texas Department of Human Resources and Child Abuse and everybody

else to try to work the very delicate problem that confronts the family. And that by divulging this information, which is not even known to some of the members of the family, that we would be doing an infinite damage to that family that would outweigh anything else except a fair trial in this case. And I don't believe that there's anything in the record that would be helpful to any issue at hand that cannot be elicited from witnesses in this case without actually divulging the records in this case and specially in view of the fact that the attorneys for the family and for the hospital have filed their objections under the— claiming that they're privileged—that there is a privileged transaction or communication that should not be violated. That was my ruling."

A trial court, of course, may generally exercise its discretion in restricting or limiting cross-examination of a witness but such restriction may amount to an unconstitutional denial of the right of confrontation. The right of free and unfettered cross-examination is basic to our adversary system. See generally, *Spain v. State*, 585 S.W.2d 705 (Tex.Crim.App.1979); *Cloud v. State*, 567 S.W.2d 801 (Tex.Crim.App.1978); *Evans v. State*, 519 S.W.2d 868 (Tex.Crim.App.1975); *Hostetter v. State*, 527 S.W.2d 544 (Tex.Crim.App.1975); *Harrison v. State*, 630 S.W.2d 350 (Tex.App.— San Antonio 1982, no writ). The test is whether the trial judge balanced the probative value of the evidence sought to be introduced against the risks its admission might entail. *Cloud v. State, supra.*

In psychiatric matters, *Hopkins v. State*, 480 S.W.2d 212, 220–221 (Tex.Crim. App.1972), directs:

"After giving the matter careful consideration, we have decided to align our law with that of those jurisdictions which do not permit psychiatric testimony for impeachment. While we realize that the law cannot remain static in a world of ever-increasing knowledge, we do not feel that the benefits, if any, to be gained from the admission of such testimony are sufficient to offset the potential for abuse and other disadvantages which such a rule would undoubtedly generate.

"Our principal fear in this regard is that the admission of psychiatric testimony will often cause the trial to become not only a trial of the defendant, but also a trial of the witness. If one side calls a psychiatrist for impeachment purposes, the other side will feel duty bound to do likewise (and rightly so). The result will likely be delay, confusion of the principal issues of the trial, and expense to the parties. However, these possibilities alone would not be sufficient to cause us to exclude such testimony. Our prime reason is that, in our opinion, the benefit to be gained from such testimony is not great enough to offset the disadvantages which we have listed.

"The state of psychiatry is such that it is more an art than a science. There exists a great deal of divergence of opinion among eminently qualified and learned men of the profession. Also, being of the nature that it is, psychiatric opinion is not only often divergent, but is often inexact. In view of this nature, the benefit to be gained by the jury would quite probably be slight. Often the jury would be subjected to conflicting witnesses and inexact opinions, the value of which would be minimal in enabling the jury to decide the issue of credibility. As is so often the case in those instances where psychiatric testimony is now permitted, the jury will quite likely be witness to a 'battle of experts' who are called, in reality, not for the general knowledge which they can bestow upon the court, but for the partisan benefit which the parties who called the witness hope to receive.

"It is true that these same objections can be properly leveled at all expert testimony. However, we feel that psychiatric impeachment testimony differs, for the reasons stated, from other expert testimony. In short, we do not feel that such testimony will enable the jury to better decide the issue. The purpose of expert

testimony is to supply knowledge which would not ordinarily be available to the trier of fact. While psychiatric information is not known by most laymen, there is still available to the jury the usual impeachment evidence such as criminal convictions and prior inconsistent statements to assist in the determination of credibility. Thus, unlike the case of highly technical issues, the jury, even without psychiatric testimony will not be left 'in the dark.' In fact, after being subjected to several conflicting, equivocating and highly technical psychiatric opinions, the jury may actually be more confused than before. We fail to perceive the benefit to be gained from 'an amateur's voyage on the fog-enshrouded sea of psychiatry.' Therefore, the trial court did not err in limiting the testimony." [footnote omitted]

We have quoted at length from *Hopkins v. State, supra*, not only because of its importance to the jurisprudence of this State, but also, hopefully, to reveal what it did *not* hold. There, the psychiatric opinion of a witness was condemned and, though our opinion is immaterial, wisely so. But no hospital records or documents concerning treatment for mental or emotional problems were offered in evidence there. *1 R. RAY, TEXAS LAW OF EVIDENCE CIVIL AND CRIMINAL § 663, at 602* (Texas Practice 3rd ed. 1980), says, in part:

"Consequently it is everywhere conceded that a witness may be discredited by proof of some mental defect which shows that he has less than normal testimonial capacity."

And, in *§ 666, at 603*, inter alia:

"Other mental derangements may be just as effectual for the purpose of impeachment."

In the case at bar, appellant makes statements and charges of the witness involved, some of which are not entirely "psychiatric", and which, if true, would cast considerable doubt on her value as a witness. We also have testimony of Dr. Schmidt before the court, as well as statements of counsel apparently reading from the hospital records. At least, deficiencies of the witness are charged which a jury is entitled to know, if true, before depriving a person of his liberty on the basis of such testimony.

As we understand *TEX.CODE CRIM. PROC.ANN. art. 40.09*, it was appellant's burden to get these hospital and other records to this Court. They are not part of our record, and without examining them, it is utterly impossible for us to determine if the trial court correctly balanced the equities. *Cloud v. State, supra.* And, in their absence, we must presume the trial court did so. This ground of error is overruled.

■ Appellant's ground of error number two states: "The trial court erred in refusing to grant the defense motion to allow the jury to consider the lesser included offenses of voluntary manslaughter, involuntary manslaughter, aggravated assault, and assault."

A charge on a lesser included offense is not required where the evidence raised only the issue that the accused is guilty of the offense charged or no offense at all. *Thomas v. State*, 578 S.W.2d 691, 698 (Tex. Crim.App.1979), and authorities cited.

■ The elements of the offense of voluntary manslaughter are the same as those for murder, with the exception that a person charged with manslaughter must show that he acted in sudden rage. See *TEX. PENAL CODE ANN. § 19.04* (Vernon 1974).

■ The following requirements must be met before a charge on a lesser offense is given:

(a) The lesser included offense must be included within the proof necessary to establish the offense charged; and

(b) There must be some evidence in the record that the defendant is guilty only of the lesser included offense.

*Royster v. State*, 622 S.W.2d 442, 446 (Tex. Crim.App.1981), and authorities cited.

In the case at bar, there is evidence the deceased attacked appellant's sister and appellant came to the aid of his sister. We

find, therefore, it was error for the court to fail to submit voluntary manslaughter to the jury, sustain this ground, and remand the case.

Reversed and Remanded.