PD-0793-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 8/12/2015 11:44:48 PM
Accepted 8/17/2015 12:39:30 PM
ABEL ACOSTA
CLERK

**PD-0973-15**

# IN THE COURT OF CRIMINAL APPEALS

_____

**MITCHELL DEAN COCHRAN,**

Petitioner/Appellant

**v.**

**THE STATE OF TEXAS,**

Appellee

_____

On Petition for Discretionary Review
From the Tenth Court of Appeals at Waco, Texas
In Cause No. 10-14-00013-CR

On Appeal from the 54th District Court in Waco, Texas
The Honorable Matt Johnson Presiding
Cause No. 2012-20-C2

_____

APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

_____

FILED IN
COURT OF CRIMINAL APPEALS

August 17, 2015

ABEL ACOSTA, CLERK

Charles W. McDonald
SBOT NO: 13538800
2024 Austin Avenue
Waco, Texas 76701
Tel:  (254) 752-9901
Fax: (254) 754-1466
E-mail: ringwraith1cwm@aol.com

***ORAL ARGUMENT REQUESTED***

# IDENTITY OF PARTIES AND COUNSEL

**Parties:**

Petitioner/Appellant            Mr. Mitchell Dean Cochran

Appellee                    The State of Texas


**Trial Counsel:**

For Petitioner                Mr. Philip D. Frederick
100 N. 6th Street, Ste 900
Waco, TX 76701


For Appellee                Mr. Abelino "Abel" Reyna
Criminal District Attorney
Ms. Hilary LaBorde, Assistant
Criminal District Attorney
219 North 6th Street, Suite 200
Waco, Texas 76701

**Appellate Counsel:**

For Petitioner                Mr. Charles W. McDonald
2024 Austin Avenue
Waco, Texas 76701


For Appellee                Mr. Abelino "Abel" Reyna
Criminal District Attorney

Mr. Sterling Harmon,
Chief Appellate Division
219 North 6th Street, Suite 200
Waco, Texas 76701

# TABLE OF CONTENTS

**Page(s)**

IDENTITY OF PARTIES AND COUNSEL ............... i

INDEX OF AUTHORITIES .......................................... ii

STATEMENT REGARDING ORAL ARGUMENT ...... v

STATEMENT OF THE CASE ................................. v

STATEMENT OF PROCEDURAL HISTORY ............ viii

GROUND(S) FOR REVIEW ..................................... 1
    Ground for Review No. 1:
    The Court of Appeals erred in denying Petitioner the right to meaningfully cross-examine several key witnesses about contradictory statements contained in a CPS report proffered by the State that was used repeatedly before the jury. (In controvertion of the Constitutional right of confrontation and Tex. R.Evid. 610, 611, 612 and 613.)

REASONS FOR GRANTING REVIEW ..................... viii

ARGUMENT ........................................................ 1

PRAYER ............................................................. 10

SIGNATURE ....................................................... 10

CERTIFICATE OF COMPLIANCE ........................ 11

CERTIFICATE OF SERVICE ................................ 11

APPENDIX:
Exhibit No. 1: Court of Appeals Opinion

# INDEX OF AUTHORITIES

**Cases**                                                              **Page(s)**

*Coleman v. State*, 545 S.W.2d 831, 834 (Tex. Crim. App. 1977) ............................................................................ 9

*Davis v. Alaska*, 415 U.S. 308, 316, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974) ......................................................... 7, 9

*Fuentes v. State*, 673 S.W.2d 207, 209 (Tex. App., Beaumont 1984, pet. ref.) ....................................................... 6

*Howard v. State*, 505 S.W.2d 306 (Tex. Crim. App. Rev. on other grounds) .......................................................... 3

*Gaskin v. State*, 172 Tex. Crim.7; 353 S.W.2d 467 (Tex. Crim. App. 1962) ......................................................... 4

*Greene v. Wainwright*, 634 F.2d 272, 275 (5th Cir. [Fla.] 1981) ........................................................................ 8

*Pointer v. Texas*, 380 U.S. 400, 403, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965) ...................................................... 5

*Robertson v. State*, 871 S.W.2d 701; (Tex. Crim. App. 1993) (rev. on other grounds) .......................................... 5

*Robinson v. State*, 550 S.W.2d 54, 59 (Tex. Crim. App. 197 ... 4

*Spain v. State*, 585 S.W.2d 705, 710 (Tex. Crim. App. 1979) ... 7

*United States v. Bares*, 790 F.2d 392, 400 (5th Cir. [Tex.] 1986) ........................................................................ 7

*United States v. Balliviero*, 708 F.2d 934, 938 (5th Cir. [La.] 1983), *cert. denied,* 464 U.S. 939 (1983) ................... 6

*Virts v. State*, 739 S.W.2d 25, 29 (Tex. Crim. App. 1987) (plurality opinion) .................................................................... 8

## **Constitutions**

U.S. Sixth Amendment ……………………………………….. 5

U.S. Fourteenth Amendment ……………………………… 6

## **Rules**

Tex. R. Evid. 610(b)……………………………………… x,2
Tex. R. Evid. 611 ………………………………………… x,1
Tex. R. Evid. 612 ………………………………………… x,1
Tex. R. Evid. 613 ………………………………………… 1, 3

## Statement Regarding Oral Argument

Oral argument will aid the decisional process. By granting oral argument, counsel may answer questions posed by the judges regarding the codification of the "Gaskin Rule" and "use before the jury rule," plus its relation to this case. In addition, oral argument would allow counsel to answer questions regarding the constitutional and evidence rules concerning impeachment/cross-examination parameters. Petitioner respectfully requests the opportunity to appear and present oral argument.

## Statement of the Case

This cases arises out of allegations that Petitioner, Mitchell Dean Cochran, sexually assaulted his step- daughter, Cassondra Garcia. The victim testified that she resided with Petitioner during grades 2 -10. (3 RR at 162)

Detective Brad Bond, Hewitt PD (chief detective), stated the investigations of the case began in 2009.

Cassandra Garcia gave a description of the abuse. (3 RR at 173) She was 14 or 15 when the abuse by Petitioner started.

She began cutting herself shortly thereafter. (3 RR at 185-186) Petitioner denied the allegations on two or more occasions. (3 RR at 34, 43)

Central to the issues in this case is a CPS report that was mentioned throughout the trial (in the presence of the jury), beginning at 3 R.R. at 78. The main detective talked about inaccuracies in the CPS report beginning at 3 R.R. at 80. The State even had this report marked as Exhibit 2, although it was never admitted into evidence. (3 R.R. at 124) The crux of the report is that it mentions that the victim and her mother both stated therein that problems in the home started or had to do with the victim being caught with boys in the family home without permission. The victim and the mother both testified that there were not ever any boys in the home or that it caused any problems. (3 R.R. at 253-256) (4 R.R. 85). The trial court prevented defense counsel the opportunity to cross-examine the victim's mother about these discrepancies by granting the States' motion and, objections during trial. (4 R.R. 85-87) The defense was not allowed to impeach the mother with prior inconsistent

statements made by the mother to a CPS worker in an unsigned report. The CPS witness no longer worked for CPS and was unavailable. Her supervisor could say that the records contain a narrative that the mother made 2 statements about boys in the house. (4 R.R. 101 – 105) The defense made an offer of proof showing that the CPS report would impeach the mother and the victim with prior inconsistent statements. (4 R.R. 130 – 137) The origin of the CPS report, where it came from and the state acknowledging the report's accuracy is amply set forth. (4 R.R. 101-105) The CPS supervisor testified about the report, its purported author, and its authenticity, but was not allowed to answer in the presence of the jury about the prior inconsistent statements concerning the "boys at the house issue".

Ms. Terrell (supervisor) testified that the CPS report narrative related that the victim's mother had reported two incidents where the victim had been caught with boys in the house. (4 RR at 133) Ms. Terrell also agreed that the narrative contained a purported opinion from the victim's grandmother that the victim had a history of lying. (4 RR at 134)

The trial court also prevented the pertinent questions about prior bad acts and testimony inconsistencies with two defense witnesses with first-hand knowledge of same. (4 RR at 291-296, 4 RR at 331-336)  Offers of proof were also made of these, as well.

## Statement of Procedural History

Petitioner was indicted on January 12, 2012 on 5 counts of sexual assault of a child, a person whom defendant is prohibited from marrying and 2 counts of indecency with a child by contact. (CR at 6-9)   Following a trial by jury, on December 13, 2013 the jury sentenced Petitioner to 12 years TDCJID on each count, with the sentence to run consecutively on the first two counts and concurrently on counts 3-7.  (CR at 151)  On that same date, the trial court certified this was not a plea bargain case and defendant had the right to appeal.  (CR at 140)  Notice of appeal was filed on December 13, 2013. (CR at 141)   An unpublished Memorandum Opinion was delivered on April 16, 2015 and Petitioner's Motion for Rehearing was denied on May 27, 2015, hence this PDR.

## Reasons for Granting Review

The Court should grant discretionary review in this appeal because the Waco Court of Appeals:  (1) has decided important questions of state and federal law in a way that conflicts with the

applicable decisions of this Court and of the Supreme Court of the United States; (2) has misconstrued Tex.R.Evid. 610, 611, 612 and 613 which are the codification of "the use before the jury" and "Gaskin" rules; and (3) has so far departed from the accepted and usual course of judicial proceedings as to call for an exercise of this Court's power of supervision. TEX. R. APP. P. 66.3.

## Grounds for Review

**Ground for Review 1:**

The Court of Appeals erred in denying Petitioner the right to meaningfully cross-examine several key witnesses about contradictory statements contained in a CPS report proffered by the State that was used repeatedly before the jury. (In contravention of the Constitutional right of confrontation and TRE 610, 611, 612 and 613.)

## Argument

Counsel submits that the opinion written by the court of appeals fails to take into consideration certain key issues and arguments advanced by Petitioner.

Counsel suggests the court of appeal's opinion glossed over the trial court's denial of a meaningful cross-examination by preventing the defense counsel from impeaching and exploring prior inconsistent statements by several key witnesses during the trial. These witnesses included the complainant, complainant's mother, grandmother and brother. Such denial of cross-examination centers around a CPS report that was

mentioned throughout the trial in the presence of the jury. The key substance of the report states that the complainant, her mother, and grandmother previously mentioned (to CPS) problems in the home, the complainant being caught at different times with boys without parental permission and drug use.

The CPS records were properly authenticated and in effect stipulated to as accurate by the State. 4 R.R. 101-104. The credibility of these witnesses were the core of the case. It was crucial for the defense to be able to adequately cross-examine these witnesses and to discredit them.

The State concedes in its brief that the chief detective and lead investigator in the case identified the CPS report as a copy of the (actual) document. (3 RR at 79) The chief detective also stated he reviewed the CPS report prior to his in court testimony. (3 RR at 33 – State), (3 RR at 78-79, 93 – defendant)

A witness may be cross-examined on any matter relevant to any issue in the case, including credibility. Tex. R. Evid. 610(b). The trial court prevented proper and necessary cross-examination that would've reflected the unreliability of the

State's key witnesses for the jury's consideration. This cross-examination should have been allowed to provide Petitioner the opportunity to show the bias, motive, false testimony or ill will of these witnesses. The report also contained prior inconsistent statements by various witnesses that the defense was prevented from going into in violation of Tex. R. Evid. 613.

The court of appeals improperly focused on the authenticity of the CPS report and disregarded the following facts:

- the State's witness (chief detective) used it to refresh his memory prior to testifying;
- the prosecution, on direct examination, put it in issue;
- it was repeatedly used before the jury;
- the detective used it during his investigation;
- the detective authenticated the report;
- the State had it marked as an exhibit; and
- The State conceded in its brief that the detective identified the CPS report.

Under the (old) "use before the jury rule" a defendant is entitled to inspect, upon his timely request, any document, instrument or statement which has been used by the State before the jury in such a way that its contents become an issue. *Howard v.*

*State*, 505 S.W.2d 306 (Tex. Crim. App. 1974) (rev. on other grounds) This was superseded by Tex. R. Evid. 611.

Under the (old) "Gaskin Rule" where a witness for the State has made a report or has given a statement prior to testifying, the defendant, after a timely motion or request, is entitled to inspect and use such prior and available report or statement for cross-examination and impeachment purposes, and this right obtains even though the witness has not used the instrument to refresh his memory. *See Gaskin v. State*, 172 Tex. Crim.7; 353 S.W.2d 467 (Tex. Crim. App. 1962) This was superseded by Tex. R. Evid. 612.

"When a writing is used by the witness to refresh his memory, the opposing party upon request can inspect the document and use it for purposes of cross-examination. Further the opposing party can introduce the document, not for the truth of the matter asserted, but for use by the jury in comparing the document to the witness's testimony". *Robertson v. State*, 871 S.W.2d 701; (Tex. Crim. App. 1993) (rev. on other grounds)

"In this instance the report was used by the witness to refresh his memory prior to testifying." *Id.*

"Rule 611 is broader than prior common law rules governing admissibility of documents relied upon by witnesses. Previously, the introduction of such documents were governed by the "Gaskin Rule" and the "use before the jury rule." The "Gaskin Rule" only applied where the writings were prepared by the witness. Additionally, the scope of discovery and introduction of documents under the "Gaskin Rule" was limited to cross-examination and impeachment. Rule 611 does not contain any such limitation, but simply provides that portions of the document used to refresh a witness's memory which "relate to" the testimony of the witness." *Id*

"A document admitted under Rule 611 is not admitted for the truth of the matter asserted, but rather it is admitted for purposes of testing the credibility of the testifying witness." *Id* (internal citations omitted)

Every defendant has a Sixth Amendment right to confront adverse witnesses. U.S. Const., Amend. VI; *Pointer v. Texas*, 380 U.S. 400, 403, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965). The Sixth Amendment right of confrontation consists of four elements: physical

presence, oath, cross-examination, and observation of demeanor by the trier of fact.

The right of cross-examination is included in the right of confrontation and is one of the essential safeguards to a fair trial. *Pointer v. Texas*, 380 U.S. 400, 404, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965)

The right of a free and unfettered cross-examination is considered basic to our adversary system. *Fuentes v. State*, 673 S.W.2d 207, 209 (Tex. App., Beaumont 1984, pet. ref.)  As a result, a deprivation of the right of cross-examination is considered to be a denial of the Fourteenth Amendment guarantee of due process. *Pointer v. Texas*, 380 U.S. 400, 405, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965)

The defendant must be given an opportunity to reveal to the jury the facts from which the jurors, as triers of fact and credibility, can appropriately draw inferences relating to the reliability of the witness. S*ee United States v. Balliviero*, 708 F.2d 934, 938 (5th Cir. [La.] 1983), *cert. denied,* 464 U.S. 939 (1983)

The proper determination by the court of appeals is whether the trial court imposed unreasonable limits on cross-examination such that a reasonable jury might have received a significantly different impression of a witness's credibility had the defendant been permitted to pursue the proposed cross-examination. *United States v. Bares*, 790 F.2d 392, 400 (5th Cir. [Tex.] 1986)

Cross-examination is the principal means by which the believability of a witness and the truth of the testimony are tested. *Davis v. Alaska*, 415 U.S. 308, 316, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974)  An effective cross-examination should expose the limits of the witness's knowledge of relevant facts, place the witness in his or her proper setting, and test the witness's credibility. *Spain v. State*, 585 S.W.2d 705, 710 (Tex. Crim. App. 1979)

Counsel suggests that the court of appeals failed to consider that the trial court improperly limited Petitioner's Sixth Amendment right to confront and cross-examine witnesses against him by circumscribing the non-collateral impeachment questions proffered. The impeachment of the complainant, her mother, brother and grandmother certainly should have been

allowed in the presence of the jury. The State knew not only of the CPS reports authenticity, but used every means available to discredit it and ultimately to prevent Petitioner's defensive use of it. The State did not consider it a collateral matter as they had it marked as evidence for intended use until it became clear that Petitioner could possibly make better use of it defensively.

A trial court should generally allow the defendant great latitude to show any relevant fact that may affect a witness's credibility. *Virts v. State*, 739 S.W.2d 25, 29 (Tex. Crim. App. 1987) plurality opinion; *Robinson v. State*, 550 S.W.2d 54, 59 (Tex. Crim. App. 1977

Therefore, the permissible scope of cross-examination in this area should be wide. *Greene v. Wainwright*, 634 F.2d 272, 275 (5th Cir. [Fla.] 1981)

It provides the defendant with an opportunity to place the witness in a proper setting regarding his or her testimony. Extreme prejudice results from a denial of this opportunity. *Harris v. State*, 642 S.W.2d 471, 476 (Tex. Crim. App. 1982), *cert. denied,* 484 U.S. 872 (1987), *Davis, supra*

A party should be allowed to show all facts that tend to demonstrate mental bias, interest, prejudice, or any other motive, mental state, or status of the witness that, fairly considered and construed, might even remotely tend to affect the witness's credibility. *Hinojosa v. State*, 788 S.W.2d 594, 600 (Tex. App., Corpus Christi 1990, pet. ref.)

Any motive that operates on the mind of a witness during testimony is material to the trial because of its effect on the witness's credibility. S*ee Coleman v. State*, 545 S.W.2d 831, 834 (Tex. Crim. App. 1977)

## Conclusion

The State used the CPS report to buoy up its case to bolster the credibility of its witnesses. (3 R.R. at 80, 112, 115-122) Yet the State persuaded the trial court to help sink Petitioner's case by denying effective cross-examination. (4 R.R. at 101-105, 291-296, 331-336) The court of appeals affirmed this by disregarding over 50 years worth of constitutional common and statutory law by opining instead on authenticity. Clearly, the State and the court of appeals cannot have it both ways when it harms

Petitioner by depriving him of fundamental constitutional and statutory rights and this court should so hold.

## Prayer

Petitioner requests the Court to: (1) grant review on the issue presented in this petition for discretionary review; and (2) grant such other and further relief to which he may show himself justly entitled and accordingly so prays.

Respectfully submitted,

Charles W. McDonald
Texas Bar No. 13538800
2024 Austin Avenue
Waco, Texas 76701
Tel:  (254) 752-9901
Fax:  (254) 754-1466
Attorney for Petitioner,

/s/*Charles W. McDonald*
Charles W. McDonald

## Certificate of Compliance

The undersigned hereby certifies, pursuant to Rule of Appellate Procedure 9.4(i)(3), that this computer-generated document contains 1760 words.

/s/ *Charles W. McDonald*
Charles W. McDonald

## Certificate of Service

The undersigned hereby certifies that a true and correct copy of this brief was served electronically on August 12, 2015 to: (1) counsel for the State, Sterling Harmon, sterling.harmon@co.mclennan.tx.us; and (2) the State Prosecuting Attorney, lisa.mcminn@SPA.texas.gov.

/s/ *Charles W. McDonald*
Charles W. McDonald

# APPENDIX



# IN THE
# TENTH COURT OF APPEALS

### No. 10-14-00013-CR

**MITCHELL DEAN COCHRAN,**

**Appellant**

 **v.**

**THE STATE OF TEXAS,**

**Appellee**

**From the 54th District Court
McLennan County, Texas
Trial Court No. 2012-20-C2**

## MEMORANDUM  OPINION

In two issues, appellant, Mitchell Dean Cochran, challenges his convictions for five counts of sexual assault of a child and two counts of indecency with a child by contact.  *See* TEX. PENAL CODE ANN. §§ 21.11, 22.011 (West 2011).  Specifically, Cochran asserts that the trial court erred by:  (1) preventing him from presenting impeachment evidence; and (2) denying him the right to properly cross-examine two witnesses.  We affirm.

# I.     BACKGROUND

Cochran was charged by indictment with five counts of sexual assault of a child and two counts of indecency with a child by contact.  At the conclusion of the evidence, the jury found Cochran guilty on all counts and sentenced Cochran to twelve years' confinement in the Institutional Division of the Texas Department of Criminal Justice on each count.  The trial court stacked two of the sentences and ordered that the remaining sentences run concurrently.[1]  The trial court also certified Cochran's right of appeal, and this appeal followed.

## II.     IMPEACHMENT EVIDENCE

In his first issue, Cochran contends that the trial court erred in not admitting impeachment evidence—statements allegedly contained in a CPS report.

## A.     Standard of Review

We review a trial court's admission or exclusion of evidence for an abuse of discretion.  *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010).  A trial court abuses its discretion if it acts arbitrarily or unreasonably, without reference to any guiding rules or principles.  *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990).  When considering a trial court's decision to admit or exclude evidence, we will

---

[1] The judgments for each of the convicted offenses reflect that the sentences were to run concurrently; however, both the case information sheet contained in the Clerk's Record and the trial court's statements in open court indicate that two of the sentences were ordered to run consecutively with the remaining sentences to run concurrently.  *See Ex parte Madding*, 70 S.W.3d 131, 135 (Tex. Crim. App. 2002) ("A trial court's pronouncement of sentence is oral, while the judgment, including the sentence assessed, is merely the written declaration and embodiment of that oral pronouncement.  When the oral pronouncement of sentence and written judgment vary, the oral pronouncement controls." (internal citations omitted)); *Taylor v. State*, 131 S.W.3d 497, 500 (Tex. Crim. App. 2004); *see also Robinson v. State*, Nos. 10-13-00304-CR & 10-13-00305-CR, 2014 Tex. App. LEXIS 6631, at **4-5 (Tex. App.—Waco June 19, 2014, no pet.) (mem. op., not designated for publication).

not reverse the trial court's ruling unless it falls outside the "zone of reasonable disagreement." *Id.* at 391; *see Manning v. State*, 114 S.W.3d 922, 926 (Tex. Crim. App. 2003).

**B.**     **Discussion**

On appeal, Cochran complains that the trial court erroneously prevented him from impeaching the victim in this case with statements she allegedly made to a CPS caseworker. Cochran asserts that the statements contained in the CPS report were central to his theory to undermine the credibility of the victim. It appears that Cochran wished to impeach the victim about her prior drug use and her sneaking boys in the house that put her at odds with her parents.

> Under Texas Rules of Evidence 104(a), whether or not to admit evidence at trial is a preliminary question to be decided by the court. A bedrock condition of admissibility of evidence in any legal contest is its relevance to an issue in the case—that is to say, its tendency to make a fact of consequence to determination of the action more or less probable. Evidence has no relevance if it is not authentically what its proponent claims it to be. . . . In performing its Rule 104 gate-keeping function, the trial court itself need not be persuaded that the proffered evidence is authentic. The preliminary question for the trial court to decide is simply whether the proponent of the evidence has supplied facts that are sufficient to support a reasonable jury determination that the evidence he has proffered is authentic.

*Tienda v. State*, 358 S.W.3d 633, 637-38 (Tex. Crim. App. 2012) (internal citations & footnotes omitted). In other words, the trial court does not abuse its discretion if it finds that a reasonable juror could not reasonably find that the evidence has been authenticated. *See Druery v. State*, 225 S.W.3d 491, 502 (Tex. Crim. App. 2007) ("Indeed, the requirement of authentication or identification as a condition precedent to

admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what the proponent claims." (internal citations & quotations omitted)).

At trial, the victim, the victim's brother, the victim's mother, and the investigating police officer all testified that the statements attributed to them in the CPS report were never made by them and, thus, were untrue. Specifically, the investigating officer testified that the CPS caseworker inaccurately attributed statements to him "so I question anything that she (the caseworker) puts in there, quite frankly." Moreover, Veronica Terrell, an investigative supervisor for CPS, testified that the employment of the CPS caseworker who wrote the report in this case had been terminated because of "[c]oncerns with falsification of documentation." Terrell discovered that the CPS caseworker alleged "she had interviewed certain people and they had told her certain things, but that the people would say, no, I hadn't told them—told her that." Accordingly, Terrell testified that the CPS caseworker did not do reliable work. Additionally, the record reflects that the CPS caseworker who drafted the report did not testify, and the victim testified that she neither reviewed nor signed the purported CPS report.

Based on the foregoing, we cannot say that Cochran, the proponent of the impeachment evidence, satisfied his burden of demonstrating that the purported CPS report was authentic. *See* TEX. R. EVID. 104(a); *see also Tienda*, 358 S.W.3d at 637-38; *Druery*, 225 S.W.3d at 502. Therefore, because nothing in the record authenticates the purported statements contained in the CPS report, none of the statements were admissible to impeach the victim's testimony. *See* TEX. R. EVID. 104(a); *see also Tienda*,

358 S.W.3d at 637-38; *Druery*, 225 S.W.3d at 502. Accordingly, we cannot say that, in performing its Rule 104 gate-keeping function, the trial court abused its discretion in excluding the complained-of evidence for impeachment purposes. *See Martinez*, 327 S.W.3d at 736; *Manning*, 114 S.W.3d at 926; *Montgomery*, 810 S.W.2d at 380. We overrule Cochran's first issue.

### III.     CROSS-EXAMINATION OF WITNESSES

In his second issue, Cochran argues that the trial court erred in limiting his right to cross-examine Lois Helmick and Mitchell Dean Cochran II regarding the victim allegedly sneaking boys into the house without permission. However, Cochran's brief does not have a specific section addressing his second issue. Instead, Cochran's argument section melds his two issues together to the extent that it appears that his second issue is dependent on the resolution of his first issue—an issue that we have already overruled. Nevertheless, Cochran makes the following statements, without citation to authority, that appear to be the extent of his second issue:

> Appellant was prevented from going into prior bad acts of the victim when the appellant's son was on the stand. Appellant also was denied the ability to prove up the victim[']s drug use and that her having had boys in the house causes her parents to be mad at her and argue with each other about this behavior. The judge refused the same questions of Lois Helmick, a defense witness, to be asked in front of the jury. This was also preserved by an offer of proof.

Based on our review of Cochran's brief and the record, we cannot say that Cochran has successfully demonstrated that the trial court erred in limiting cross-examination of the complained-of topic in this issue. *See* TEX. R. APP. P. 38.1(i); *see also Delaware v. Van Arsdall*, 475 U.S. 673, 678, 106 S. Ct. 1431, 1434-35, 89 L. Ed. 2d 674 (1986)

(noting that the right of cross-examination is not unlimited and that the trial court retains wide latitude to impose reasonable limits on cross-examination); *Irby v. State*, 327 S.W.3d 138, 145 (Tex. Crim. App. 2010) ("Nonetheless, the trial judge retains wide latitude to impose reasonable limits on such cross-examination . . . ."). As such, we overrule Cochran's second issue.

## IV. CONCLUSION

Having overruled both of Cochran's issues on appeal, we affirm the judgments of the trial court.


AL SCOGGINS
Justice

Before Chief Justice Gray,
        Justice Davis, and
        Justice Scoggins
(Chief Justice Gray concurring with a note)*
Affirmed
Opinion delivered and filed April 16, 2015
Do not publish
[CR25]

*(Chief Justice Gray concurs in the Court's judgment of affirmance without a separate opinion.)

